## Murphy v. Pettitt.

(Decided May 25, 1923.)

### Appeal from Nelson Circuit Court.

1. Appeal and Error—Irrelevant Testimony Plaintiff's Husband was in Bad Health Held Not Prejudicial to Defendant.—In a civil action for assault and battery on a married woman, evidence that plaintiff's husband was in bad health, which was introduced to show that plaintiff was required to do a portion of her husband's work and also to explain away an intimation that she was the controlling boss in the household, even if remote and irrelevant on the issues, did not materially affect the substantial rights of defendant, and its admission does not require a reversal of the case.

2. Appeal and Error—Evidence Plaintiff was Rightfully in Possession of Property Over Which Trouble Arose Held Not Prejudicial Error.—In a civil action for assault and battery, following a dispute over right to possession of a pig, evidence on behalf of plaintiff that she was rightfully in possession of the pig, and that it was in the barn on a farm, which her husband held as defendant's tenant and which he was breaking at the time the difficulty arose, was not materially erroneous, where defendant himself introduced the written contract of tenancy, and his evidence showed plaintiff's husband was some sort of bailee of the pig.

3.  Assault and Battery—Punitive Damages May be Recovered for Willful Assault and Battery Without Justification.—An assault and battery, committed by defendant upon a married woman without legal justification, was necessarily willful and malicious, and punitive damages may be recovered therefor.

4.  Appeal and Error—General Verdict Presumed Under Instructions to be for Compensatory Damages . Only.—Where the court instructed the jury, if it found both compensatory and punitive damages for plaintiff, to state the amount of each, a general verdict for plaintiff for a stated sum must be presumed to have been rendered for compensatory damages only, although they were authorized, if they believed the testimony of plaintiff, which they evidently did, to supplement the compensatory with punitive damages.

5.  Appeal and Error—Failure to State Punitive Damages Separately Not Reversible Error.—A judgment for plaintiff in a civil action for assault and battery will not be reversed solely because of the failure of the jury to carry out the direction of the court to state separately the compensatory and punitive damages awarded.

6.  Assault and Battery—$700.00 for Assault and Battery on Woman Producing Injury Held Not Excessive as Compensatory Damages. —In a civil action for assault and battery by a man 42 years of age who weighed 200 pounds, where plaintiff's evidence, which was accepted by the jury, showed the assault was without legal justification or excuse, and consisted in knocking her down and thereafter kicking her in the side, after which she suffered a miscarriage, which medical evidence authorized the jury in attributing to the assault, a verdict for $700.00 was not excessive, even if the entire amount be considered as compensatory damages.

KELLEY & KELLEY for appellant.

FULTON & FULTON for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

Appellee and plaintiff below, Susan M. Pettitt, recovered a judgment in the Nelson circuit court against appellant and defendant below, A. R. Murphy, for the sum of $700.00 as damages for injuries inflicted upon plaintiff by defendant unlawfully assaulting, beating and bruising her from the effects of which, according to the averments her petition, she suffered mental and physical pain and in addition brought about her miscarriage and caused her to abort a fetus about two months old. The answer admitted the commission of the assault and battery on plaintiff, but denied its extent as alleged in the petition, as well as the damaging effects of it and pleaded the affirmative defense of *son assault demesne.* That plea

was denied by reply and a trial before a jury resulted as above indicated.

A new trial was refused defendant and he has appealed and his counsel urge as reversible errors (1), incompetent evidence introduced by plaintiff over his objection; (2), error of the court in authorizing the jury by its instructions to return punitive damages, and (3), that the verdict did not follow the instructions of the court by separately fixing the compensatory and punitive damages if the jury returned any of the latter. The motion for a new trial also complained of the refusal of the court to give instructions offered by defendant and of the instructions which the court gave on its own motion, but that ground is not argued in brief and presumably it is abandoned. However, we have carefully examined the given and refused instructions and fail to discover any support for this contention, since the given instructions cover all the points contained in the offered ones and to our minds they were exceptionally clear and accurate.

It will be necessary in disposing of the grounds relied on in brief of appellant's counsel to make a statement of the substance of the testimony. Plaintiff was the wife of a tenant on defendant's farm in Nelson county. The tenancy was for a year, expiring in March, 1921, and the assault complained of occurred at the barn on the leased premises about nine o'clock a. m. on February 28 of that year. Defendant had driven his wagon to the home of a neighbor who lived some distance beyond the premises occupied by plaintiff, her husband and family, for the purpose of getting some article he had purchased at a public sale given by his neighbor. It appears that he carried along in his wagon a box in which he intended to place a pig that was in the tenant's barn and which defendant had delivered to the tenant some two months before. Just prior to the delivery of the pig to plaintiff's husband defendant had purchased three pigs from a neighbor, one of which was blind in one eye, had no ears and was deaf. According to his testimony, he delivered that pig to plaintiff's husband under an arrangement whereby it was to become the property of the latter on certain conditions, but if those conditions did not occur defendant would be entitled to the pig by allowing a credit on any sum due to him from the tenant on final settlement at an agreed valuation for the tenant's attention to the pig. Conceiving that under the terms of the arrangement, testified to by him, defendant concluded that

he was entitled to the pig and had the right to repossess himself of it, and in returning from his neighbor's with the purchased article he passed plaintiff's house and stopped his wagon near the barn located some 150 yards therefrom and went to its back door, which had been and was closed at the time of the beginning of the tenancy by boards and planks nailed across it. He began tearing away those planks, and plaintiff, who had gone to the barn to salt some of the stock, heard and inquired of him his purpose, when he answered that he intended to get the pig which was then in the barn. Plaintiff disputed his right to do so and informed him that he should not have the pig unless he paid her $1.50 for her attentions to it. He informed her that he would pay nothing; whereupon she informed him that he should not have it, and the parties engaged in some hot words and directed epithets towards each other, which are not necessary to repeat here, nor is it necessary to determine which was the first to use them. Plaintiff testified that at that time defendant had torn away the boards and planks closing the door except two at the bottom and that she took her seat in the opened door when plaintiff struck her in the left eye with his fist and knocked her to her knees; that she attempted to arise and he repeated the assault, and did so a third time, when he also kicked her in the side, and that she did not attempt to strike or in any manner assault or injure him. Defendant testified that after the application of the epithets to him, which he said were used by plaintiff toward him, she struck him with a stick of some kind that she had in her hand and then clawed his face with her hands and that he then gently slapped her in his necessary self-defense; and that he did not strike her with his fist nor did he kick her in the side. The physician visited by plaintiff as well as other witnesses testified as to considerable swelling and discoloration in her eye and one or more of them testified to a bruise on her side, while there was evidence by defendant and one other witness that he had some scratches or perhaps other wounds on his face. Plaintiff testified that her period immediately commenced and the flowing increased until Saturday (the assault occurring on Monday) when she suffered the miscarriage, and the physician witness stated that such a result would most likely follow if plaintiff's testimony as to what occurred was true; and there is no testimony showing any other cause for the miscarriage except that plaintiff had suffered one some three or four years prior thereto, which

fact, according to the medical testimony, renders a subsequent one more probable. It will thus be seen that the testimony as given by the parties litigant, who were the only eye-witnesses to the transaction, was in some of its most material aspects exceedingly contradictory and made a case essentially for determination by a jury.

Coming now to the argued grounds for reversal, it is contended under ground (1), that the court erred in permitting plaintiff to testify that her husband was in bad health. Perhaps, technically, the testimony was irrelevant. It was no doubt elicited for the double purpose of showing (a) that plaintiff, because of the physical condition of her husband, was compelled to do a portion of his work and to perform more than her ordinary household duties, which under the proof she did, and (b), to explain away the intimation by plaintiff that she was the directing and controlling boss in her husband's household, including the affairs more properly appertaining to his duties as the head of the family. It might have some remote bearing on those two points, but whether so or not, we fail to see how it could in the least materially affect the substantial rights of the defendant, and in the absence of such effect we are not authorized to grant a new trial under the express provisions of section 340 of the Civil Code, and an unbroken line of decisions based thereon. Neither do we find any material error in admitting the evidence complained of as to who was entitled to the possession of the barn. Defendant, himself, introduced the written contract of tenancy and the testimony of plaintiff complained of followed that testimony and did not contradict the substance of the writing; but if he had we are by no means certain that it was incompetent, since we are of the opinion that plaintiff had the right to show that she was not only lawfully in possession of the pig, about which the controversy arose, but likewise lawfully in possession of the barn in which it was kept and which plaintiff was breaking at the time of the difficulty for the purpose of possessing himself of the pig. It at least showed that plaintiff was at the barn where she had a right to be, and so far as the proof shows she had the right to protect its contents, which were either the property of her husband, or of herself and husband. Even according to the testimony of defendant the husband of plaintiff was some sort of bailee of the pig and defendant as bailor could not repossess himself of it by force of arms.

If the assault and battery complained of as a basis for the action was committed without legal justification, as testified to by plaintiff, it was necessarily willful and malicious for which punitive damages may be recovered under an elementary principle of the law of torts, and we can discover no basis for ground (2), urged for a reversal in brief of counsel.

Instruction 4 given by the court said: "If the jury find for the plaintiff, and find both compensatory and punitive damages for her, they will say in their verdict how much they find for compensatory damages and how much they find for punitive damages;" and instruction 5 authorized the jury to mitigate any punitive damages found by "any matter of provocation which preceded the assault and battery," if the jury believe there was any such preceding provocation on the part of plaintiff. Under ground (3), it is contended that the jury returned a general verdict for $700.00 and did not follow the instructions given in number 4. It will be observed that the instruction only authorized a separation of damages in the event that the jury awarded punitive damages in favor of plaintiff, and in the absence of any such separation it will be presumed that the entire verdict was for only compensatory damages, although they were authorized if they believed the testimony of plaintiff (which they evidently did) to supplement the compensatory with punitive damages. If we should conclude that any part of the verdict represented punitive damages, we would not feel authorized to reverse the judgment solely because of the failure of the jury to carry out the direction of the instruction, since it evidently could not be considered in the light of all the facts of the case as materially affecting defendant's substantial rights. Independently, however, of that consideration, we think the evidence amply sufficient to sustain the verdict as representing compensatory damages alone. Accepting the facts as necessarily found by the jury, defendant, who was a man about 42 years of age and weighed 200 pounds, without provocation or legal excuse, assaulted the plaintiff, a woman and the mother of several children, and knocked her with his fist to her knees and then kicked her in the side. She necessarily suffered some physical pain and some mental anguish growing out of the humiliation of such treatment, to say nothing of the subsequent miscarriage, which under the testimony the jury had the right to infer resulted

from the assault, and it can not be said that the verdict was excessive if representing exclusively compensatory damages.

Finding no error authorizing a reversal of the judgment, it is accordingly affirmed.